Good morning, aloha, and welcome to the Ninth Circuit. With my colleagues, Judge Graber and Judge Desai, we are delighted to be here in Las Vegas. We have several cases that were on the calendar today that we have submitted on the briefs. Fang v. Garland, Forrest v. Sposiri, and Espinoza v. Corrections Corporation of America are all submitted on the briefs. We have three cases set for argument today. The first case set for argument today is Plumb v. Kijazaki, and I think both counsel are present by video. And 10 minutes aside, counsel, whenever you are ready, let's just make sure we can hear everybody. Mr. Phillips, can you hear us? Yes, sir. All right. And is it Ms. Feier? Feier, yes. Yes, I can hear you. Okay, great. Thank you. All right. So, counsel for the appellant, whenever you are ready, you can proceed. Thank you, and good morning. I would ask to reserve two minutes for rebuttal. My client, Terry Plumb... I'm sorry? Yes, please go ahead. Okay, very good. Thank you. My client, Terry Plumb, has suffered from debilitating diabetes, ulcerative proctosigmoiditis, renal tubular psoriasis, hypertension, chronic pain, intestinal disease, obesity, diverticular disease, and back pain since at least March 20th, 2016, when at the age of 51, she was forced to stop working as defined under the regulations. The ALJ denied her claim for disability benefits. The district court affirmed and we're here today. The agency conducted no physical consultative examinations of Ms. Plumb. Ms. Plumb's treating specialist, Dr. Rattay, found she could sit less than two hours in total in an eight-hour working day. Counsel, I have a question, if I may. You referred to her treating physician as a specialist, but the ALJ concluded that the treating physician was not entitled to be given the deference of a specialist. Why, in your view, was that conclusion or finding clearly wrong? Well, first of all, thank you for your question. First of all, the doctor is an internal medicine specialist. The judge got that wrong and she said she was a primary care physician, which she was also working as that in this case because it was so extensive. The DOT describes internal medicine a doctor as a specialist and that is what they are. Ironically, while the judge, for one, didn't give any weight to our doctor's opinion because they didn't meet the specialty, all that our doctor had to have was a medical degree to reach these findings. But in any other case, I'm sorry, go ahead. No, we always have issues with, or we sometimes have issues with video, don't worry about it. So, you know, what I looked at was the ALJ didn't credit Dr. Rattay's opinion over the others because, for example, the ALJ found that basically her opinions were inconsistent with the longitudinal record and was talking about, for example, and I'm looking at I think it's ER or AR 846, where Dr. Rattay is saying your client has never undergone any neurologic workup, nor do we have any x-rays that are current. So the ALJ said, you know, the opinions based on that kind of a record are entitled to little weight. Why is that not pertinent? Well, the record does, and I cite this in my opening brief, the record does have 18 in-person examinations. And this is a doctor who also found spasm. Spasm is not something that is a minor item. It doesn't matter how often you have spasms. It doesn't matter how severe they are. If a doctor is able to determine that spasms do occur on examination, that's a highly significant factor. The other thing I will say, the judge discredited the treating doctor specialty, and yet one of the desktop reviewers at EDS is also an internal medicine doctor, and the judge credited that doctor. But again, counsel, I didn't see that the ALJ was, quote unquote, discrediting Dr. Rattay because of her credentials, as opposed to because the ALJ just found that her opinion was inconsistent with the record. I mean, one of the things the ALJ was talking about, for example, was the progress notes of the treating neurologist, I may pronounce this wrong, Dr. Sharif, who basically was saying for the leg pain, continue on oral meds, counseled, chose understanding, but not recommending anything more than that. And to me, that was the type of thing the ALJ was relying on. Well, the ALJ at page 25 does say that, thus, Dr. Rattay does not have specialized expertise to make such findings regarding the claimant. What I know is that any medical doctor can make these findings. Counsel, can you hear me? Can you point us to where in the record you think there's evidence to suggest more aggressive treatment? Because that's another factor here that you argue in your opening brief that the ALJ's finding that your client's treatment was routine and conservative was false. But I'd like to know if you can point us to anywhere in the record that shows your client received more aggressive treatment. Even going to an internal medicine doctor is not routine and is not conservative treatment. I'm not sure what you can do with diabetes other than what the doctor was doing. I'm not sure what you could do with that this particular treating doctor had with all of these things. The back pain, we don't know what the back pain is from. There may not have been a need for an orthopedic or neurological examination at that point. If it could be caused by diabetes, that's what the doctor was treating her for, all of these various things. Counsel? Judge Graber has a question. It is hard to get to because one can't hear the other person with the video. The only severe impairment that the ALJ found was related to the back and to other orthopedic issues. Lumbar degenerative disc disease, I can't pronounce these things, radiculopathy and cervical stenosis. The other issues were found to be non-severe. I think the reason why the ALJ may have not looked at Dr. Rattay as a specialist is that she is neither an orthopedist nor a neurologist. Again, the issues that you are referring to, the diabetes and the gastrointestinal problems and so forth, were all found to be non-severe and not having a functional effect. Again, what is there about the skeletal problems that you think was overlooked? What I go by is what the doctor is diagnosing my client with. The list I read at the beginning was actually what the treating doctor, after extensive treatment history, had found to be items that he would be treating them for. Non-severe still have to be included in the RFC. Even if they are not found severe, you have to include the limitations. She is supposed to look at the entire record. What she did was completely discounted the doctor's opinion, except when she did ask one question, based on Dr. Rattay's opinion, the DE said no work. Counsel, you have about a minute left. Do you want to keep that for rebuttal? I'll reserve that. All right. We'll give you your two minutes for rebuttal. All right. Thank you. Good morning, Your Honors. Elizabeth Thier on behalf of Kilolo Kijikazi, the Acting Commissioner of Social Security. This is a one-issue case where Clayman is alleging that the ALJM improperly rejected Dr. Rattay's opinion. I would like to first get to Judge Graber's point, which is that when asked why she couldn't work, the claimant testified that it was because of low back pain and leg numbness. She also reported that in the document at 12E, where she's giving her own account of why she can't work. They're orthopedic conditions. In that respect, the specialist issue does matter here because the ALJ was basically saying, given what this claimant is particular medical specialty, which is internal medicine, doesn't put your opinion above the opinions of the state agency non-reviewing physicians. One of those, Dr. Griffith, the second one, is also an internal medicine specialist. If you look at pages 110 to 112, Dr. Griffith looked at a lot of evidence in this record. It is all very consistent and conservative treatment, relatively mild objective findings. Yes, there's an MRI that does show some degeneration in her spine, particularly in the lower spine. That accounts for her low back pain. But this ALJ found that Dr. Rattay's opinion, in the context of this record overall, was just not entitled to any weight. Partly because the limitations that Dr. Rattay assessed are very extreme, to the point she can only sit for 10 minutes. But even within that, every half an hour the claimant has to get up and walk around for 20 minutes. The limitations don't even make sense. But what is also very relevant here, and which the ALJ relied on, is the only thing that Dr. Rattay used to support this is muscle spasms. There are only two indications in Dr. Rattay's own notes where she reported muscle spasms. Aren't muscle spasms objective medical evidence of Ms. Plum's impairment? Yes, they are objective evidence. But they're not the kind of objective evidence that justifies the extreme limitations. Why isn't that enough here? I'm sorry? Why isn't that enough here? Two accounts of muscle spasms in a 1,300-page record do not justify, the ALJ reasonably found that that does not justify the extreme limitations that Dr. Rattay assessed. And you have many, many other examinations in this record where a claimant had a normal gait, relatively normal examination findings. Her objective findings are not that severe, in moderate limitations in the MRI. She had a bone density scan that was normal. It's very reasonable for this ALJ to have found that those instances of muscle spasms do not support that functional capacity assessment from Dr. Rattay. The ALJ also found that Dr. Rattay's opinion is, if you look at her own notes, she did not conduct the kind of examinations that would justify those limitations either. And her records are from 828 to 864, I think it is in the record. I've read every single one of those treatment records all the way through. There is, and my opponent actually blocks them in his opening brief as well. And the objective findings, the clinical findings in those records just do not support a claimant who is only capable of sitting for 10 minutes at a time, only capable for standing 15 minutes at a time, only capable of walking less than one block. You know, you have the claimant is also reporting, and the ALJ reported, also found that the activities. And she, if you look at page, or exhibit 12E, which is again a claimant self-report, she documents a pretty normal day. She does admit she has pain sometimes, and she admits that she's doing these things a little bit slower than normal. But she does all of her eight activities of daily living. She shops, she cooks, she takes care of her grandson, and she also, as the ALJ points out, she worked after her alleged onset date as a maid, which is very inconsistent with the kind of limitations that Dr. Rattay assessed. So what we have here basically is an ALJ who provided valid, legally valid reasons for rejecting Dr. Rattay's very extreme opinion. And those, the ALJ's readings are also supported by substantial evidence in the record. So unless you have any further questions, we would like to say please affirm. All right. Thank you. Mr. Phillips, we'll put two minutes on the clock for you. Thank you. So, first of all, this court is limited to looking at exactly what the judge said, not other parts of the record. What we need to look at, and so was the district court, but what we need to look at is that. Now, there was a mention of Dr. Rattay's extreme findings. They're actually pretty moderate. I mean, she can lift 20 pounds occasionally. She could lift 10 pounds occasionally. That's not an extreme finding. What we're talking about here are the posterior limitations. So I would not suggest that these findings are extreme. Spasm, what we have here are spasms on examination. There's no suggestion in here she had two spasms over these years. But when a doctor finds spasm on examination, that increases the seriousness of the condition because you can't, spasms are real and a doctor knows how to see them. They can't be made up or whatever. So when you look at the judges, the ALJ's rationale for rejecting Dr. Rattay's detailed and extensive opinion, I would hope that Dr. Rattay's credited as true, and I would ask that the agency's decision be reversed and this matter be remanded for immediate calculation of benefits. Thank you. All right. We thank counsel for their arguments and the case just argued will be submitted.
judges: GRABER, BENNETT, DESAI